**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT PIKEVILLE**

RICHARD STUMP AND JEAN STUMP, )
HIS WIFE; EARL STANLEY AND )
DELPHIA STANLEY, HIS WIFE; )
KERMIT SWINEY; DANNY MEADE )
AND PAMELA MEADE, HIS WIFE; )
GREG BENTLEY AND ANETTNNE )
BENTLEY, HIS WIFE; RONNIE )
THACKER AND RUTH THACKER, HIS )
WIFE; BUCKY SCOTT AND CONNIE )
SCOTT, HIS WIFE; BRUCE PRATER )
AND DARLENE PRATER, HIS WIFE; )
MICHAEL NEWSOME AND MARY )
NEWSOME, HIS WIFE; DUANE BURKE )
AND DONNA BURKE, HIS WIFE; )
PERRY MAY AND LINDA MAY, HIS )
WIFE; STEVE GRIFFEY AND BECKY )
GRIFFEY, HIS WIFE; JOHN REED AND )
SANDY REED, HIS WIFE; CLIFFORD )
HALL AND ELLEN HALL, HIS WIFE; )
MELVIN COLE AND AMELIA COLE, )
HIS WIFE; RANDY MCKINNEY AND )
RITA MCKINNEY, HIS WIFE; )
KERMIT NEWSOME; STIRL HATFIELD )
AND JUDITH HATFIELD, HIS WIFE; )
RICHARD HUNT AND NATASHA )
HUNT, HIS WIFE; ELLIS ROWE AND )
BURITA ROWE, HIS WIFE; ALVES )
CANTRELL AND LEANDRA CANTRELL, )
HIS WIFE; DANNY VANHOOSE; )
JACKIE SCOTT AND LAURA SCOTT, )
HIS WIFE; CARLOS BLACKBURN AND )
JOYCE BLACKBURN, HIS WIFE; )
CURTIS NEWSOME AND BARBARA )
NEWSOME, HIS WIFE; HUBERT )
NEWSOME AND LORETTA NEWSOME, )
HIS WIFE; THURMAN WYATT AND )
PEGGY WYATT, HIS WIFE; DENNIS )
ADKINS AND JOANN ADKINS, HIS )
WIFE; BOBBY LEWIS; RUSSELL )
RATLIFF AND TINA RATLIFF, HIS )
WIFE; CHARLEY MYERS AND SANDRA )
MYERS, HIS WIFE; LARRY G MOUNTS )
AND ANGELA MOUNTS, HIS WIFE; )

JOE THACKER AND VERDA THACKER, HIS WIFE; DOROTHY PRATER, ADMINISTRATOR OF THE ESTATE OF IRELAND KENDRICK; RONALD MAY AND DEBRA MAY, HIS WIFE; ROBERT COMPTON AND LINDA COMPTON, HIS WIFE; HAROLD DEAN COLLINS AND JANIS COLLINS, HIS WIFE; ROGER KIDD AND PAULINE KIDD, HIS WIFE; JOHNNY HALL AND JUDY HALL, HIS WIFE; FONSO MCINTOSH AND BRENDA MCINTOSH, HIS WIFE; LEONARD RATLIFF AND SHERLENE RATLIFF, HIS WIFE;

Plaintiffs,

v.

3M COMPANY, a foreign corporation; MINE SAFETY APPLIANCES COMPANY, LLC, a foreign corporation; AMERICAN OPTICAL CORPORATION, a foreign corporation; CABOT CSC LLC, a foreign corporation; AEARO TECHNOLOGIES, LLC; a foreign corporation; MINE SERVICE COMPANY, INC., a Kentucky corporation; KENTUCKY MINE SUPPLY COMPANY, a Kentucky corporation.

Defendants.

Civil Action No.:____________

**DEFENDANT 3M COMPANY'S NOTICE AND CERTIFICATE OF REMOVAL**

## NOTICE OF REMOVAL

3M Company gives notice of removing this case (number 22-CI-223) from the Pike County, Kentucky, Circuit Court to the United States District Court for the Eastern District of Kentucky, Southern Division at Pikeville. This District and Division are proper for a case removed from the Pike Circuit Court.[1]

---

[1] 28 U.S.C. § 1441(a).

## INTRODUCTION

Eastern Kentucky is awash in claims against respirator manufacturers. Thousands of coal miners allege they wore respirators to prevent coal workers' pneumoconiosis (CWP, or black lung), yet developed that disease. They sue what amounts to the entire industry of respirator manufacturers, and almost uniformly join claims against local mine supply stores.

The Court already knows this. The respirator defendants removed six similar cases last fall, brought by the same lead Plaintiffs' counsel,[2] asserting federal question jurisdiction and fraudulent joinder, as well as jurisdiction under the Class Action Fairness Act (in some cases). Motions to remand are pending in those matters.

This case was filed last month against many of the same respirator manufacturers[3] and two of the ubiquitous local "Supplier Defendants," Kentucky Mine Supply Company and Mine Service Company. As in the previously removed cases, counsel pleaded Plaintiffs' state-law fraud claim so as to trigger federal question jurisdiction, under the *Grable* doctrine. The central theme is that the Respirator Defendants—effectively the entire respirator industry—perpetrated a decades-long fraud on the federal agency that regulates respirators (or its predecessors). Plaintiffs' counsel also pleaded claims against the Supplier Defendants, two local mine supply stores. Those claims are fraudulently joined, because Kentucky law immunizes the Supplier Defendants. All Defendants consent to removal.

---

2 Those cases are *Adams v. 3M Co.* (No. 7:21-cv-82); *Banks v. 3M Co.* (No. 7:21-cv-83); *Combs v. 3M Co.* (No. 7:21-cv-84); *Hamilton v. 3M Co.* (No. 7:21-cv-87); *Mounts v. 3M Co.* (No. 7:21-86); and *Yates v. 3M Co.* (No. 7:21-cv-85).

3 3M, Mine Safety Appliances (MSA), American Optical (AO), Cabot CSC, and Aearo Technologies. Collectively, the "Respirator Defendants."

A federal question exists under *Grable*; diversity of citizenship exists because of the fraudulent joinder. Both support federal jurisdiction. These cases belong in federal court.

## GROUNDS FOR REMOVAL

28 U.S.C. § 1441 allows removal because this case could have been filed in this Court under both 28 U.S.C. §§ 1331 and 1332.

The case presents a federal question. The Complaint alleges that 3M and the other Respirator Defendants misled a federal agency (NIOSH, or its predecessors)[4] for decades. These fraud-on-NIOSH allegations, the lynchpin of Plaintiffs' story, implicate vital national interests meriting a federal forum.

Diversity jurisdiction also exists. Plaintiffs are completely diverse from all properly joined Defendants, and the amount in controversy exceeds $75,000. The non-diverse Supplier Defendants, local mine supply stores who allegedly sold respirators to Plaintiffs' coal mine employers, are fraudulently joined. Under Kentucky's "Middleman" statute, KRS 411.340, Plaintiffs have no colorable claim against them.

### I. This Court has federal question jurisdiction.

Congress has authorized two paths for claims to "arise under" federal law, for purposes of 28 U.S.C. § 1331.[5] The first, "when federal law creates the cause of action asserted,"[6] doesn't apply. But even a state-law claim may "arise under" federal law.[7] The

---

4 The relevant federal agency has changed over time. For a time, it was the U.S. Bureau of Mines or the Mine Safety and Health Administration. For simplicity, the notice of removal subsequently refers to NIOSH or its predecessors.

5 *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

6 *Id.*

7 *Id.* at 258.

Supreme Court has "condensed" this second path into a clear test.[8] "[F]ederal jurisdiction over a state-law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."[9]

Where these are satisfied, federal "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."[10] The absence of a federal private right of action is "not dispositive of" congressional intent.[11]

Plaintiffs claim fraud, alleging that what amounts to the entire respirator industry violated federal regulations governing respirators.[12] Consider 3M, for example. In Plaintiffs' view, 3M didn't comply with NIOSH directives, inform purchasers its respirators couldn't satisfy federal certification requirements, or redesign the respirators to satisfy federal regulatory requirements.[13] Plaintiffs also allege 3M fraudulently

---

8 *Id.*

9 *Id.*

10 *Id.* (quoting *Grable & Sons Metal Prods., Inc v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005)).

11 *Grable*, 545 U.S. at 318 (discussing *Merrell Dow Pharma. Inc v. Thompson*, 478 U.S. 804 (1986)).

12 Complaint at ⁋⁋ 32 *et seq.* (Count IV). For simplicity, 3M subsequently refers to this count as the "fraud claim."

13 *Id.* at ⁋ 35.

represented its respirators complied with federal law when they didn't,[14] and violated a federal statutory duty[15] to disclose that its respirators didn't comply with federal law.[16]

Plaintiffs make similar allegations against the other Respirator Defendants, and these allegations intertwine with Plaintiffs' other claims. For example, as part of their negligence claim, Plaintiffs allege that the Respirator Defendants used their "governmental approval as a cover," and that their failure to manufacture respirators complying with "federal certification regulations" caused their respirators to be defective.[17]

Plaintiffs chose to plead their case to necessarily raise a substantial question of federal law. Federal resolution of that issue won't upset the congressionally sanctioned balance between federal and state courts. This Court has federal question jurisdiction under 28 U.S.C. § 1331.

### A. Plaintiffs' fraud claim "necessarily raises" a federal question because it can't be evaluated without analyzing and interpreting federal law and regulations.

A federal issue is "necessarily raised" when its resolution requires deciding a federal issue.[18] For example, resolving a federal patent issue was necessary to decide a legal-malpractice claim where the plaintiff had to prove that, had the defendant attorney litigated the federal issue, an earlier lawsuit's outcome would have been different.[19]

---

14 *Id.* at ⁋ 37.

15 30 U.S.C. § 820(h).

16 Complaint at ⁋ 37.

17 *Id.* at ⁋ 24.

18 *Gunn*, 568 U.S. at 259.

19 *Id.*

Similarly, an Internal Revenue Code provision's interpretation was necessarily raised where the defendant allegedly breached a contractual duty not to violate the provision; the plaintiff also alleged the defendant had fraudulently concealed the violation.[20]

Here, interpreting and analyzing federal regulations is essential to Plaintiffs' fraud claim, and the theme of a failure to comply with federal regulations permeates the Complaint. To prevail on a Kentucky fraud claim, a plaintiff must prove, among other elements, that the defendant made a false representation knowingly or with reckless disregard for the representation's truth.[21] The claim is about an alleged fraud first made on the federal government before its effects could be felt by the public. In various ways, Plaintiffs allege that 3M's and the other Respirator Defendants' products didn't comply with federal regulations and that it was fraudulent of them to represent that their products did.[22] But federal agencies including NIOSH did, in fact, certify the 3M products at issue beginning in 1972, and NIOSH continues to do so today as to 3M's 8210 N95 respirator.[23]

Plaintiffs chose to plead their fraud claim to require the trier of fact to interpret and apply federal regulations.[24] They also chose to allege that 30 U.S.C. § 820(h)

---

20 *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 569 (6th Cir. 2007) (*en banc*).

21 *Epps Chevrolet Co. v. Nissan N. Am., Inc.*, 99 F. Supp. 3d 692, 706 (E.D. Ky. 2015) (citation omitted).

22 Complaint at ⁋ 35.

23 Exhibit 2 (May 24, 1972 Letter from Bureau of Mines to 3M Company; 8710 respirator) at 1-2; Exhibit 3 (Apr. 14, 1986 Letter from Mine Safety and Health Administration and NIOSH to 3M Co.; 8715 respirator) at 1-2; Exhibit 4 (Aug. 16, 1995 Letter from NIOSH to 3M Co.; 8210 respirator), at 1-2. The Court may take judicial notice of these documents, matters of public record. *See, e.g.*, *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017).

24 Complaint at ⁋⁋ 35-37.

imposed a federal "statutory duty" on the Respirator Defendants "to disclose" that their respirators didn't comply with those federal regulations.[25]

To reach those conclusions, Plaintiffs will necessarily be asking the trier of fact to analyze and interpret federal law and regulations. Just as in *Gunn*, to prove their state-law fraud claim, Plaintiffs will have to prove what federal law required the Respirator Defendants and the relevant agency to do.[26] Plaintiffs' claim thus will "necessarily require application of [federal] law to the facts of [their] case[s]."[27]

### B. The federal issue is "actually disputed."

The next requirement is straightforward. If the parties disagree about the federal issue's resolution, then it is actually disputed.[28] Similarly situated plaintiffs, represented by the same counsel, didn't dispute this requirement in moving to remand last fall.[29] And like the other Respirator Defendants, 3M vigorously disputes that it defrauded the federal government. The federal issue is actually disputed.

### C. The federal issue is "substantial," because its resolution is important to the federal system as a whole.

"The substantiality inquiry" considers "the importance to the federal system as a whole."[30] "[I]t is not enough that the federal issue be significant to the particular parties

---

25 *Id.* at ⁋ 37.

26 *Gunn*, 568 U.S. at 259.

27 *Id.*

28 *Gunn*, 568 U.S. at 259 (citing *Grable*, 545 U.S. at 313).

29 *See, e.g.*, Plaintiffs' Memorandum in Support of Motion for Remand at 27-38, *Adams v. 3M Co.*, No. 7:21-cv-82 (E.D. Ky. Nov. 24, 2021) [Doc. 23].

30 *Gunn*, 568 U.S. at 260.

in the immediate suit."[31] To evaluate substantiality, the Sixth Circuit balances four factors:

> (1) whether the case includes a federal agency, and particularly, whether the agency's compliance with a federal statute is in dispute;
>
> (2) whether the federal question is important (*i.e.*, not trivial);
>
> (3) whether a decision on the federal question will resolve the case (*i.e.*, the federal question is not merely incidental to the outcome); and
>
> (4) whether a decision on the federal question will control many other cases (*i.e.*, the issue is not anomalous or isolated).[32]

"[N]o single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case."[33] Some examples of what does *not* qualify:

- Allegations that a defendant intentionally misinterpreted an Internal Revenue Code provision did *not* present a substantial federal question, where the "case involve[d] no question of whether a government agency ha[d] complied with a statute or regulation."[34] Because an agency's action wasn't at issue, the federal government had only a "limited interest" in the litigation.[35] Resolution of the federal issue would have "provide[d] little if any precedent for future cases," and did not "implicate any broader or more substantial issues,"[36] because the "particular and very narrow" issue had "been at least partially superseded" by statute, so its resolution would "not be controlling over numerous other cases."[37]

---

31 *Id.*

32 *Estate of Cornell v. Bayview Loan Serv., LLC*, 908 F.3d 1008, 1015 (6th Cir. 2018) (internal quotation marks and citation omitted).

33 *Mikulski*, 501 F.3d at 570.

34 *Mikulski*, 501 F.3d at 569-71.

35 *Id.* at 570.

36 *Id.* at 571.

37 *Id.*

- Likewise, an alleged breach of a consent decree wasn't important to the federal system as a whole, where it did not concern a federal agency's action.[38]

- And a lawsuit concerning one federally regulated product wasn't a substantial federal question, because that one product's compliance with federal law "lacked importance more generally" to the "federal regulatory regime" or other manufacturers' products.[39]

By contrast, where a federal agency's application of its regulations is central to the dispute (even when the agency itself is not a party), the case *does* present a substantial federal question. In *Grable*, for example, a quiet title action between two private citizens turned on whether the IRS had improperly applied a federal statute. That issue was substantial, because the federal system had "a direct interest in the availability of a federal forum," to adjudicate federal administrative action.[40]

Allegations noticeably similar to these—that a federal agency would have acted differently had the defendant not "intentionally withheld the truth about its products and its risks"—presented a substantial federal issue in the Eastern District of Missouri case *Bader Farms, Inc. v. Monsanto Co.*, even though the allegations were part of a state-law claim.[41] There, the maker of genetically-modified seeds allegedly deceived a sub-agency of the U.S. Department of Agriculture into deregulating the seeds, setting in motion a chain of events that harmed the crops of farmers not using those seeds. The alleged deception of a federal agency was the first link in the chain. Finding a substantial

---

38 *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 476 (6th Cir. 2008).

39 *Burrell v. Bayer Corp.*, 918 F.3d 372, 385 (4th Cir. 2018) (internal quotation marks and citations omitted).

40 *Grable*, 545 U.S. at 315.

41 *Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-cv-299 SNLJ, 2017 WL 633815, at *2-3 (E.D. Mo. Feb. 16, 2017).

federal question, the *Bader Farms* court reasoned that "whether federal regulatory bodies fulfilled their duties with respect to the entities they regulate is 'inherently federal in character.'"[42]

Plaintiffs' allegations, like those in *Grable* and *Bader Farms*, satisfy the Sixth Circuit's four substantiality factors:

### 1. Plaintiffs' allegations implicate agency actions.

Unlike cases where federal jurisdiction was not satisfied,[43] a federal agency's "compliance with [applicable] federal" regulations is "in dispute."[44] In 1972, the Bureau of Mines granted "approval certification of 3M's No. 8710 single-use dust respirator under 30 CFR, Part 11," and told 3M it could "publicize the fact that your product has met the requirements of 30 CFR, Part 11."[45] In 1986, the Mine Safety and Health Administration and NIOSH approved 3M's 8715 respirator and told 3M it could "publicize the fact that the product has met the requirements of 30 CFR Part 11."[46] Those certifications remained in place for years as to the predecessor products, and the 3M 8210 N95 respirator remains federally certified.[47]

---

42 *Id.* at *3 (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001)).

43 *See, e.g.*, *Wolford v. Bayer Corp.*, No. 7:16-227-KKC-HAI, 2017 WL 5665332, at *4 (E.D. Ky. Nov. 27, 2017) (concluding issue not substantial where it didn't require court to review agency's compliance with federal law).

44 *See Mikulski*, 501 F.3d at 570.

45 Exhibit 2 at 1-2.

46 Exhibit 3 at 1-2.

47 NIOSH approved 3M's 8210 N95 in 1995 and told 3M it could "publicize the fact that this respirator has met the requirements of the Code of Federal Regulations, Title 42, Part 84." Exhibit 4 at 1-2.

These agencies did not act arbitrarily.[48] They interpreted and applied federal law and rendered a ruling. Plaintiffs' allegations challenge those rulings, by claiming that the Respirator Defendants fraudulently failed to disclose how their products didn't comply with federal regulations, and that the Respirator Defendants should have "redesign[ed]" their products to "meet federal regulatory requirements."[49]

Plaintiff may contend that he did not put agency action at issue. This is misleading, at best. Consider the extensive federal regulatory regimes for certifying respirators under 30 C.F.R. part 11 and 42 C.F.R. part 84.[50] Under both, a manufacturer applies to NIOSH's Testing and Certification Laboratory, providing extensive data about its product's performance plus a written description, drawings, and specifications.[51] NIOSH "examine[s], inspect[s], and test[s]" the product, to determine if it satisfies federal regulatory standards for approved respirators.[52] NIOSH also evaluates the "proposed plan for quality control" to see if the plan satisfies Subpart E's extensive

---

48 *See, e.g.*, *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("[A] presumption of regularity attaches to the actions of Government agencies.").

49 Complaint at ⁋⁋ 24, 35.

50 3M doesn't mean to suggest that 42 C.F.R. part 84's new testing standard wasn't an important change. 42 C.F.R. part 84 created new "particulate filter tests" that NIOSH had to administer when evaluating applications. *See* Respirator Protection Devices, 60 Fed. Reg. 30336-01, 30339 (June 8, 1995), *available at* 1995 WL 337815.

51 30 C.F.R. § 11.10(c) (1985); 42 C.F.R. § 84.10(c) (2020) (application); 30 C.F.R. § 11.11(a) & (d); 42 C.F.R. § 84.11(a) & (d) (requirements to provide data). Subsequent references are to these example years.

52 30 C.F.R. § 11.10(c); 42 C.F.R. § 84.10(c).

quality-control requirements.[53] And after approval, both regimes permit NIOSH to audit manufacturers' compliance with the approved quality-control plan.[54]

Plaintiffs' allegations implicate whether NIOSH (or its predecessors) properly performed its duties under federal law. Plaintiffs allege that the Respirator Defendants defrauded the agencies, by failing to disclose that their products couldn't comply with the federal regulations under which the agencies certified them.[55] Plaintiffs also allege that the Respirator Defendants failed to "comply with NIOSH directives to improve quality control,"[56] meaning that the Respirator Defendants didn't follow NIOSH's instructions when NIOSH exercised its regulatory audit authority.[57]

As in *Grable*, because Plaintiffs want to put federal administrative actions into question, the federal system has a strong interest in providing a federal forum to address those questions. The dispute will "center [ ] on the action of a federal agency" and compliance with federal regulations.[58] That issue belongs in federal court.

### 2. The alleged fraud presents an important federal issue.

This federal question is "important," "not trivial."[59] If Plaintiffs are right, then the Respirator Defendants' products were federally certified for decades despite the alleged

---

53 30 C.F.R. § 11.11(c) & 42 C.F.R. § 84.11(c) (Subpart E); *see* 30 C.F.R. § 11.40 to § 11.43; 42 C.F.R. § 84.40 to § 84.43(quality control).

54 30 C.F.R. § 11.43; 42 C.F.R. § 84.43.

55 Complaint at ¶ 35.

56 *Id.*

57 30 C.F.R. § 11.43; 42 C.F.R. § 84.43.

58 *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (discussing *Grable*, 545 U.S. at 313).

59 *Mikulski*, 501 F.3d at 570.

failure to comply with the relevant regulations.[60] If that's true, it undermines how NIOSH (or a predecessor) "examine[d], inspect[ed], and test[ed]"[61] what amounts to almost the entire industry of federally certified respirators, for decades. It also undermines NIOSH's exercise of its audit authority.[62]

Plaintiffs' allegations also underscore the importance of this federal question. Federal mining regulations exist to protect miners' safety, a key federal interest.[63] Federal respirator regulations likewise exist to promote the vital federal interest in occupational safety.[64] Plaintiffs say their employers relied on federal certifications when purchasing respirators.[65] The same federal certifications also allegedly gave the Plaintiffs a "false sense of security and confidence in the safety and effectiveness of the respiratory protection products" they used.[66] The vital question of why these Plaintiffs and others developed CWP, despite their claimed use of the respirators, implicates strong federal interests in mine safety and occupational use of respirators.

---

60 Complaint at ¶ 35.

61 30 C.F.R. § 11.10(c); 42 C.F.R. § 84.10(c).

62 Complaint at ¶ 35.

63 *See, e.g.*, Federal Coal Mine Health and Safety Act of 1969, Pub. L. 91-173, § 2(g), 83 Stat. 742, 743 (1969).

64 *See, e.g.*, 29 U.S.C. § 651(b) (declaring congressional purpose "to assure so far as possible [for] every working man and woman in the Nation safe and healthful working conditions"); 42 C.F.R. part 84 (recognizing this as statutory authority for regulation of respirators).

65 Complaint at ¶¶ 36, 38-39.

66 Complaint at ¶ 38.

### 3. The federal question is central to Plaintiffs' claims, and answering it will help resolve the similar claims their counsel brings in other cases.

The federal question is not "merely incidental to the outcome."[67] Whether the federal agencies correctly exercised their duties under federal law is central to Plaintiffs' fraud claim. If the federal issue is resolved against them, Plaintiffs' fraud claim fails. And their other tort claims, which rely to varying degrees on the same central theory that the Respirator Defendants defrauded the government for decades, are called into serious question.

The resolution of this federal issue will also potentially control the growing number of Plaintiffs' counsel's cases alleging that the Respirator Defendants perpetrated a fraud on the federal government. 3M was an innovator of filtering-facepiece respirators,[68] and the other Respirator Defendants together with 3M constitute essentially the entire industry. Plaintiffs' fraud claims will require the jury to analyze the "examin[ations], inspect[ions], and test[s]" that federal law required NIOSH (or a predecessor agency) to conduct when certifying those products.[69] Plaintiffs are also asking a jury to determine if an entire federally regulated industry perpetrated a decades-long and wide-reaching fraud despite NIOSH's audit authority.[70]

Plaintiffs' counsel is peddling this theory across Eastern Kentucky and West Virginia state courts. A finding that the respirator industry was able to perpetrate a

---

67 *Mikulski*, 501 F.3d at 570.

68 *See* Doc. 1-5 in *Adams v. 3M Co.*, No. 7:21-cv-82.

69 30 C.F.R. § 11.10(c); 42 C.F.R. § 84.10(c).

70 Complaint at ⁋ 35.

massive fraud, over multiple decades, could diminish NIOSH's authority and credibility as a specialized regulatory body.[71]

In this era of disinformation and "fake news," it's easy to envision how that kind of finding could undermine trust not only in essential safety devices during a global pandemic—and in the federal government itself. This is far from an isolated case against one manufacturer, about one product. Counsel represents hundreds of plaintiffs who seek to put an entire federally regulated industry on trial. If any issue "justifi[es] resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues," this is it.[72]

### D. Resolving this federal issue in federal court doesn't upset Congress's balance between federal and state courts.

Even when these three requirements are satisfied, federal courts shouldn't exercise jurisdiction if federal resolution would disrupt the congressionally sanctioned balance between federal and state courts.[73] Courts have found that balance is upset when states have a special responsibility for regulating the area at issue. That is not the case here.

---

71 Although the testing standard changed when 42 C.F.R. part 84 was implemented, the submission and application procedures of the two NIOSH regulations are analogous. A finding that the industry was able to perpetrate a fraud under one set of regulations thus could suggest that the industry has done so under the other. That further risks undermining NIOSH's authority and credibility as a specialized regulatory body.

72 *Grable*, 545 U.S. at 312.

73 *Gunn*, 568 U.S. at 264.

For example, states have a special responsibility for maintaining licensing standards for professionals.[74] That responsibility is particularly acute for lawyers, who are essential to state judicial systems and are traditionally officers of those systems.[75] So, the Supreme Court concluded in *Gunn* that a malpractice claim wasn't appropriate for federal resolution. Courts have similarly concluded that insurance claims can't appropriately be resolved in federal court without upsetting the balance. Through the McCarran-Ferguson Act and ERISA, Congress has chosen to leave insurance regulation to the states.[76] A suit involving insurance premiums thus could not be resolved in federal court without usurping that congressional choice.[77]

But when cases turn on federal statutes and regulations, their resolution in federal court does not upset the federal-state balance. So, state breach-of-contract cases requiring interpretation of the Housing and Community Development Act (and its regulations) *should* be resolved in federal court, and that doesn't disrupt the congressionally sanctioned balance.[78] This is true even though claims for breach of contract are hornbook state-law claims.

It's true here, too. A federal court's resolution of the federal issues Plaintiffs pose won't upset the congressional balance between federal and state courts. Plaintiffs'

---

74 *Id.*

75 *Id.*

76 *See* 15 U.S.C. § 1011 *et seq.* (McCarran-Ferguson Act); 29 U.S.C. § 1191(a)(1) (ERISA provision excepting insurance from complete preemption).

77 *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014).

78 *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 467-68 (7th Cir. 2015); *One & Ken Valley Hous. Grp. v. Me State Hous. Auth.*, 716 F.3d 218, 224-25 (1st Cir. 2013).

allegations don't involve an area over which states have any special responsibility. Instead, they implicate federal agencies' performance of their duties under federal law, an industry—mining—that is subject to pervasive federal regulation, and federally regulated manufacturers' production of federally regulated products—respirators. "This is not an area of concern traditionally reserved to the states."[79] Nor does resolving that issue in federal court upset the balance between state and federal courts.[80] The federal government has a vital interest in the uniformity of such decisions. As one court put it, the "substantial federal question of whether the actions of a federal agency were correct" is one that "deserves the 'hope of uniformity that a federal forum offers on federal issues.'"[81]

Plaintiffs may assert that federal jurisdiction over their claims would improperly open the floodgates to federal court. As the Court knows, thousands of plaintiffs have respirator claims pending in Kentucky state courts. But the Court need not be concerned that removal of some of those cases will improperly swamp federal courts.

When the seminal *Grable* decision expressed concern about not sweeping "garden variety state tort" claims into federal court, it was concerned about negligence *per se* liability.[82] The fear was that whenever a plaintiff alleged that a defendant was

---

79 *Chrisopherson v. Bushner*, No. 6:19-03267-CV-RK, 2021 WL 1692151, at *12 (W.D. Mo. Apr. 29, 2021) (concluding "issue of whether FEMA's map changes were proper" and complied with "relevant federal statutes and regulations" was substantial federal question satisfying federal jurisdiction), *appeal docketed* (June 30, 2021).

80 *See Evergreen Square*, 776 F.3d at 467-68; *One & Ken Valley*, 716 F.3d at 224-25; *Bader Farms*, 2017 WL 633815, at *3.

81 *Christopherson*, 2021 WL 1692151, at *12 (quoting *Grable*, 545 U.S. at 312).

82 *See Grable*, 545 U.S. at 318-19 (collecting authorities discussing "negligence per se" liability theories).

liable under state law because the defendant had broken federal "mislabeling" law or committed any "other statutory violations," all of those cases would be swept into federal court.[83] The Supreme Court was rightly wary of allowing this without an indication that was Congress's intent.[84]

That isn't the situation here. Plaintiffs don't assert that the Respirator Defendants were negligent *per se* based on a simple statutory violation or mislabeling. Although Plaintiffs allege a violated statutory duty, the core of their fraud theory is that the Respirator Defendants perpetrated a massive, long-standing fraud on NIOSH and predecessor agencies, such that for decades, the Respirator Defendants sold products that failed federal regulatory standards, even though those products were governmentally certified.[85]

This is no "garden variety" tort claim that the Respirator Defendants are negligent based on an alleged statutory violation. Rather, this fraud-on-the-agency theory requires a close look at how the alleged fraud affected federal agencies and federally regulated products. Accepting federal jurisdiction over that claim doesn't open the doors to federal court anytime a plaintiff alleges that violation of federal law equates to liability under state law.

---

83 *Id.* at 319 ("A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal court.").

84 *See id.*

85 Complaint at ¶¶ 35-42.

Relatedly, Plaintiffs' theory is particular to the lawyers representing them. Their counsel makes these extraordinarily detailed (and federally dependent) claims,[86] but those claims are atypical in the litigation as a whole. Respirator plaintiffs represented by other counsel don't allege a massive federal fraud.[87] So federal jurisdiction over *these* Plaintiffs' particular claims won't mean that *every other* plaintiff's run-of-the-mill tort claim will be removable for the reasons presented here.

Experience also counsels that only a small percentage of the pending respirator claims will be fully worked up and tried. Inherent in efficiently managing complex litigation, bellwether or test cases are used to give parties reliable data on which to base future case management decisions.[88] That's equally true whether the claims are in state or federal court. Given the substantial federal issue that Plaintiffs and their counsel chose to raise, a federal court is the appropriate forum for those relatively few test cases. Once they are resolved, the remaining inventory likely will follow.

Plaintiffs have chosen to allege that the respirator industry committed a massive fraud, so effectively that the industry allegedly duped NIOSH and its predecessors for decades. This claim necessarily raises a disputed, substantial issue of federal law with

---

86 Plaintiffs' counsel's six cases removed last fall are good examples. The Court may take judicial notice of these matters of public record on "its own docket." *Sheldon v. Lundergan Grimes*, No. 14-60-DLB-JGW, 2014 WL 12925536, at *4 (E.D. Ky. Aug. 26, 2014).

87 *See, e.g.*, Exhibit 5 (Complaint in *Strunk v. 3M Co.* (Leslie Cir. Ct. Aug. 31, 2020)) ⁋⁋ 38-47. This complaint pleads an ordinary state-law fraud claim, making no allegations about 3M's allegedly defrauding the federal government. The Court also may take judicial notice of this matter of public record, filed in a Kentucky circuit court. *See, e.g.*, *Blevins v. Phillips*, No. 10-00107-HRW, 2011 WL 5404559, at *2 (E.D. Ky. Nov. 8, 2020).

88 Federal Judicial Center, *Manual for Complex Litigation* § 22.315 (4th ed. 2004), *available at* https://www.uscourts.gov/sites/default/files/mcl4.pdf.

profound implications for the agencies, the parties, and the key federal interest in mine safety. Resolving that issue in federal court won't thwart any congressionally sanctioned balance between state and federal courts. The Court should conclude that federal question jurisdiction exists because Plaintiffs have chosen to plead a fraud claim that arises under federal law.

## II. This Court has diversity jurisdiction.

The Court has diversity jurisdiction. The alleged amount in controversy exceeds $75,000, exclusive of interest and costs, and the controversy is between citizens of different states. The Supplier Defendants' citizenship is immaterial because they are fraudulently joined.

### A. The properly joined parties are completely diverse.

The Respirator Defendants are completely diverse from Plaintiffs, who are Kentucky, Tennessee, and Virginia residents.[89] 3M is a Delaware corporation with a Minnesota principal place of business. MSA is an LLC that, for diversity purposes, is a citizen of Pennsylvania.[90] AO is a Delaware corporation with a Connecticut principal place of business.[91] Cabot CSC is an LLC that, for diversity purposes, is a citizen of

---

89 *See* Complaint at ⁋ 2.

90 *See* Doc. 1-6 in *Bowen v. 3M Company et al.*, No. 7:22-cv-13.

91 *See* Doc. 1-7 in *Bowen v. 3M Company et al.*, No. 7:22-cv-13.

Massachusetts and Delaware.[92] Aearo Technologies in an LLC that, for diversity purposes, is a citizen of Minnesota and Delaware.[93]

### B. The Supplier Defendants are fraudulently joined. Each is immune from liability under Kentucky law.

The two Supplier Defendants are Kentucky citizens.[94] That is immaterial to federal jurisdiction because they are fraudulently joined.

Dating to the nineteenth century,[95] fraudulent joinder is an exception to at least two conditions of removal: (1) if based on diversity, the parties must be completely diverse; and (2) all defendants must consent.[96] Fraudulent joinder prevents plaintiffs (and their counsel) from using a sham claim against a non-diverse defendant to avoid federal court.

"A defendant is fraudulently joined if it is clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law."[97] Courts describe the fraudulent-joinder inquiry as whether the plaintiff has a "colorable"

---

92 *See* Corporate Disclosure Statement of Defendant Cabot CSC LLC, *Blankenship v. Cabot CSC LLC*, No. 1:20-cv-10022-PBS (D. Mass. Mar. 30, 2020) [Doc. 14]; Cabot Corp., Annual Report (Form 10-K) (Nov. 29, 2021), *available at* https://investor.cabot-corp.com/static-files/e26f80cf-55f5-4d2c-be44-e2d7cd32d50f.

93 *See* Corporate Disclosure Statement of Appellant Aearo Technologies LLC, *Graves v. 3M Company & Aearo Technologies LLC*, No. 20-1635 (8th Cir. Mar. 31, 2020).

94 Complaint at ¶¶ 12-13.

95 Charles Alan Wright & Arthur R. Miller, 14C Fed. Prac. & Proc. § 3723.1 n.1 (Rev. 4th ed. Apr. 2021 update) (collecting cases).

96 *Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 564 (6th Cir. 2015); *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009).

97 *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432-33 (6th Cir. 2012) (alteration, internal quotation marks, and citation omitted).

claim against the non-diverse defendant, or whether "a colorable basis [exists] for predicting that a plaintiff may recover against [the non-diverse] defendant."[98] In evaluating fraudulent joinder, courts look beyond the pleadings to "consider summary judgment evidence" and determine "whether there are undisputed facts that negate the claim."[99] Factual controversies are resolved in the plaintiff's favor, "but only when there is an actual controversy"; courts do not "in the absence of any proof, assume that the [plaintiff] could or would prove the necessary facts" to negate fraudulent joinder.[100]

Kentucky law immunizes a "middleman" (product supplier) from liability "arising solely from the distribution or sale of [a] product" unless the plaintiff proves the middleman "breached an express warranty or knew or should have known" when the product was sold or distributed that the product was "in a defective condition, unreasonably dangerous to the user or consumer."[101] A plaintiff must plausibly allege "specific or special knowledge of dangerousness by the retailer" to avoid the Middleman Statute's protections.[102]

Plaintiffs don't plead an express warranty claim against the Supplier Defendants. Plaintiffs instead claim that the Supplier Defendants are liable because they knew, or

---

98 *Chambers*, 796 F.3d at 564; *Casias*, 695 F.3d at 433 (alteration, internal quotation marks, and citation omitted).

99 *Casias*, 695 F.3d at 433 (internal quotation marks and citation omitted).

100 *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir. 2000) (emphasis and citation omitted).

101 KRS 411.340 (the "Middleman Statute").

102 *Conrad v. Sherwin Williams Co.*, No. CIV.A. 12–237–JBC, 2012 WL 5332494, at *2 (E.D. Ky. Oct. 29, 2012).

reasonably should have known, that the respirators they allegedly sold were defective.[103] These aren't colorable claims.

### 1. If the Respirator Defendants misled everyone, then the Supplier Defendants had no reason to know of any product defects.

Plaintiffs' allegations show their claims against the Supplier Defendants aren't colorable. Among other things, they allege that the Respirator Defendants:

- "made false material representations of [their] products' safety and express warranties in sales literature, advertisements and sales promotional communications";
- concealed "material information" within their "**exclusive knowledge**" about "their products";
- "unjustifiably marketed and advertised the respirator products to be effective against harmful respirable-sized pneumoconiosis producing dust as would be found in coal mines"; and
- "concealed and failed to disclose to the public at large, [their] **distributors**, the purchase[rs] and users of their products, the research or information which demonstrated the limitations and failures of their safety products."[104]

Plaintiffs then allege that these misrepresentations deceived "the general public at large, including, but not limited to, the Plaintiffs and their employers" regarding "the safety and efficacy of [the] respiratory protection products."[105] According to Plaintiffs, the Respirator Defendants "had superior knowledge of the certification irregularities" of their respirators.[106] As discussed, Plaintiffs also contend that the Respirator Defendants

---

103 Complaint at Counts I, II, V, and VI. Plaintiffs also seek punitive damages against the Supplier Defendants. Count VII.

104 Complaint at ⁋⁋ 24, 34, 35, 37, 41 (emphasis added).

105 Complaint at ⁋ 36.

106 Complaint at ⁋ 37.

deceived even specialized federal agencies into providing "governmental approval" of their products under the relevant federal regulations.[107] And Plaintiffs insist that this concealment was so significant that the Respirator Defendants should be estopped from asserting the statute of limitations.[108]

According to Plaintiffs, the Respirator Defendants didn't just fool the federal government, but also the "distributors," necessarily including the Supplier Defendants. Yet Plaintiffs also claim that the Supplier Defendants somehow should have known that the respirators they allegedly sold were defective. Plaintiffs say the Supplier Defendants should have read several publications, over the course of four decades.[109] And through deductive reasoning, the Supplier Defendants should have learned that certain respirators (although not specifically identified) are defective and unreasonably dangerous.[110]

Plaintiffs can't have it both ways. It defies reason to say that the Respirator Defendants committed a long-running fraud so successfully that even the sophisticated agencies that regulate the industry could not detect it, but at the same time to say that the Supplier Defendants—also supposedly duped by the alleged fraud—had a legal duty to ferret out that fraud.[111]

---

107 Complaint at ⁋ 24.

108 Complaint at ⁋ 41.

109 Complaint at ⁋ 44.

110 *Id.*

111 Complaint at ⁋⁋ 44-45.

Imposing that duty flies in the face of the Middleman Statute.[112] Plaintiffs are asking the Court to conclude that Kentucky law requires the Supplier Defendants—local mine supply stores—to (1) employ an army of expert industrial hygienists to scrutinize thousands of pages of technical and scientific data found in every potentially relevant scientific publication and report on those to their customers; (2) obtain legal counsel to compare that data with federal regulations, and check behind the federal agencies' approvals of such products; and (3) somehow learn about a defect that was allegedly within the Respirator Defendants' "exclusive knowledge."[113] In other words, Plaintiffs claim that Kentucky law charges the Supplier Defendants with a duty to act as a failsafe on fraud upon the federal government and the public at large.

That isn't reasonable, and it isn't ordinary care for a supplier under Kentucky law.[114] As this Court has held, a supplier may reasonably depend upon national certifications, especially when the supplier has no role in the product's testing or certification process.[115] If the Respirator Defendants concealed the "material information" within their "exclusive knowledge" so well that they should be estopped from asserting the statute of limitations, then the Supplier Defendants cannot reasonably be charged with knowing that "material information."[116]

---

112 This question of legal duty is a "question of law for the court to decide." *Johnson v. Wal-Mart Stores E., LP*, 169 F. Supp. 3d 700, 703 (E.D. Ky. 2016).

113 Complaint at ¶¶ 37, 41.

114 *Neblett v. Bros.*, 325 F. Supp. 3d 797, 810 (E.D. Ky. 2018).

115 *Taylor v. Southwire Tools & Equip.*, 130 F. Supp. 3d 1017, 1023-24 (E.D. Ky. 2015).

116 Complaint at ¶ 41.

Plaintiffs are asking the Court to gut the Middleman Statute. Their fraud allegations show they lack colorable claims against the Supplier Defendants.

### 2. Plaintiffs' citations to regulations and publications don't show the Supplier Defendants had actual or constructive knowledge necessary to defeat Middleman immunity.

Kentucky law doesn't charge the Supplier Defendants with a duty to read and understand decades of scientific literature for each category of product they sold. Even if it did, the Complaint's listed publications wouldn't have informed the Supplier Defendants that the specific respirators at issue were defective.

3M attached the cited portions of those publications to the notices of removal it filed last fall.[117] The publications contain general scientific knowledge; none communicates that any particular respirator is defective or unreasonably dangerous, or that a class of respirators have shared defects. Plaintiffs' allegation that the Supplier Defendants should have pieced those publications together and thereby learned that specific products were defective is fatuous.

Underscoring this, the Occupational Safety and Health Administration (OSHA)—possessing far more knowledge and retrospective perspective than the Supplier Defendants—has already debunked Plaintiffs' litigation-driven theories. In the 2000s, OSHA conducted a giant retrospective study of filtering facepiece respirators, and considered the arguments and allegations presented by many of the expert witnesses commonly retained by respirator plaintiffs and these Plaintiffs' counsel. That study found that this category of respirators, including 3M's, achieve the level of protection for which they were designed and can be reliably fit checked, expressly rejecting the

---

117 *See* Doc. 1-7 in *Adams v. 3M Co.*, No. 7:21-cv-82.

litigation-driven theories presented.[118] It would make a mockery of the Middleman Statute to conclude that local mine supply stores should have read general scientific publications and reached a conclusion opposite from the one OSHA reached.

**3. Plaintiffs' likely responses are unavailing.**

Plaintiffs may argue that because this Court has previously rejected fraudulent joinder arguments about the Supplier Defendants, they aren't fraudulently joined. But Plaintiffs' counsel's unique fraud allegations require a fresh analysis of fraudulent joinder. And Plaintiffs' counsels' pattern and practice of joining the Supplier Defendants solely to defeat diversity is now more fully and indisputably established.

Unlike earlier cases, Plaintiffs here say the Respirator Defendants defrauded not just the government, *but also the Supplier Defendants*. The allegations—quoted above—speak for themselves. Plaintiffs chose to allege that the Respirator Defendants concealed their product defects from everyone, including "distributors."[119]

If these fraud allegations are credited, the Supplier Defendants cannot reasonably have known of the alleged product defects. That means the Supplier Defendants cannot be liable under Kentucky law. A contrary ruling would gut the Middleman Statute. The Supplier Defendants are fraudulently joined.

**4. The amount in controversy exceeds $75,000.**

A "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."[120] Evidence is required only when that

---

118 Assigned Protection Factors, 71 Fed. Reg. 50122, 50163-64 (Aug. 24, 2006).

119 Complaint at ¶¶ 24, 35.

120 *Dart*, 574 U.S. at 89.

allegation is disputed.[121] The amount in controversy accounts for the alleged categories and nature of damages.[122] The more numerous and serious the categories, the more plausible it becomes that the amount in controversy exceeds $75,000.[123] Punitive damages can count toward the amount in controversy.[124]

The Complaint makes apparent that the amount in controversy plausibly exceeds $75,000. The categories of damages alleged are numerous and significant. Plaintiffs claim compensatory damages for past and future medical expenses, past and future lost wages and earning capacity, past and future pain and suffering, and physical disfigurement.[125] Plaintiffs also seek punitive damages.[126] Assuming a very conservative 2:1 punitive damages ratio, compensatory damages would need to exceed just $25,000 to reach the jurisdictional threshold. Any one of the compensatory categories listed above can easily reach that in a personal injury case.

Defendants don't anticipate that Plaintiffs will challenge the amount in controversy. If Plaintiffs do, Defendants will submit additional evidence.

### III. Defendants satisfy the technical removal requirements.

This removal meets the technical requirements of timeliness, joinder, service, and notice. The removal is within 30 days after March 29, 2022, when the Complaint

---

121 *Id.*

122 *E.g.*, *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

123 *E.g.*, *Hayes*, 266 F.3d at 573; *Luckett*, 171 F.3d at 298.

124 *Kovacs*, 406 F.3d at 397; *see also Heyman*, 781 F. App'x at 471-472; *Hollon*, 417 F. Supp. 2d at 853.

125 Complaint at Prayer for Relief ⁋⁋ 1-2. Some also claim loss of consortium. *Id.*

126 Complaint at Prayer for Relief ⁋ 3.

was served on 3M.[127] All Defendants consent to removal.[128] The service and notice requirements are met. The state court record is attached as Exhibit 1.[129] 3M will file a written notice of this removal in the Pike Circuit Court, and a copy is attached as Exhibit 6. 3M will attach this notice as an exhibit to the state court filing and provide written notice of this removal to Plaintiffs.

* * *

3M gives notice that the above-styled action is removed from the Pike Circuit Court to the United States District Court for the Eastern District of Kentucky, Southern Division at Pikeville. Plaintiffs are notified to proceed no further in state court.

**CERTIFICATE**

This is to certify that on April 28, 2022, there was served upon the Clerk of the Pike Circuit Court a copy of the Notice of Removal of this action, then pending in the Pike Circuit Court, in which said action was designated as No. 22-CI-223, to the United States District Court for the Eastern District of Kentucky, Southern Division at Pikeville.

Respectfully submitted,

*/s/ Robert H. Akers*
Bryant J. Spann
Robert H. Akers
THOMAS COMBS & SPANN
300 Summers Street, Suite 1380
Charlestown, WV 25301
Telephone: (304) 414-1800
Facsimile: (304) 414-1801
BSpann@tcspllc.com
RAkers@tcspllc.com

127 28 U.S.C. § 1446(b)(1).

128 28 U.S.C. § 1446(b)(2).

129 28 U.S.C. § 1446(a).

JBrowne@tcspllc.com
LGibson@tcspllc.com

And

Byron N. Miller
Michael J. Bender
734 West Main Street, Suite 400
Louisville, KY 40202
Telephone: (502) 585-9900
Facsimile: (502) 585-9993
bmiller@tmslawplc.com
mbender@tmslawplc.com
mhess@tmslawplc.com
mhendricks@tmslawplc.com

*Counsel for Defendant 3M Company*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was electronically filed this 28th day of April 2022, through the operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A true and correct copy of the foregoing was also mailed and/or served via electronic mail to the following:

Glenn Martin Hammond
Glenn M. Hammond Law Office
5476 North Mayo Trail
P.O. Box 1109
Lexington, KY 41501
gmhlaw@hotmail.com
erin@gmhlawoffice.com
*Counsel for Plaintiffs*

Michael B. Martin
Martin Walton, LLP
699 S. Friendswood Drive, Suite 107
Houston, TX 77546-4580
mmartin@martinwaltonlaw.com
rhonda@martinwaltonlaw.com
*Counsel for Plaintiffs*

Johnny Givens
Givens Law Firm, PLLC
240 Trace Colony Park Drive, Suite 100
Ridgeland, MS 39157
johnny@givens-law.com
jeanreid@givens-law.com
*Counsel for Plaintiffs*

M. Trent Spurlock
Alice A. Jones
Dinsmore & Shohl, LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Trent.Spurlock@Dinsmore.com
Alice.Jones@Dinsmore.com
Brenda.Goodhue@Dinsmore.com
*Counsel for Defendant Mine Safety Appliances Company, LLC*

Robert M. Connolly
Carol Dan Browning
Whitney Frazier Watt
Emily L. Startsman
Stites & Harbison, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202
rconnolly@stites.com
cbrowning@stites.com
wwatt@stites.com
estartsman@stites.com
*Counsel for Defendants American Optical Corporation, Cabot CSC LLC, and Aearo Technologies, LLC*

Patrick W. Gault
Napier Gault Schupbach & Stevens, PLC
730 West Main Street, Suite 400
Louisville, KY 40202
pgault@napiergaultlaw.com
abury@napiergaultlaw.com
*Counsel for Defendants Mine Service Company, Inc. and Kentucky Mine Supply Company*

*/s/ Robert H. Akers*
*Counsel for Defendant 3M Company*